**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 20-20707-CIV-COOKE/GOODMAN**

PROFESSIONAL PLAZA CONDOMINIUM
ASSOCIATION, INC.,

      Plaintiff,

v.

LANDMARK INFRASTRUCTURE HOLDING
COMPANY, LLC, et al.,

      Defendants.
_____/

**REPORT AND RECOMMENDATIONS ON DEFENDANT LANDMARK'S
MOTION FOR ATTORNEY'S FEES AND COSTS**

Plaintiff Professional Plaza Condominium Association, Inc. ("Plaintiff" or "Association") sued Landmark Infrastructure Holding Company, LLC ("Landmark" or "Defendant") and others for declaratory and injunctive relief concerning Landmark's right to renew a lease or enter into new leases pursuant to a disputed easement to use a portion of the rooftop of Plaintiff's building for telecommunication service purposes. [ECF No. 27].

Landmark and Co-Defendant Cellco Partnership ("Cellco") jointly moved to dismiss Plaintiff's Third Amended Complaint. United States District Judge Marcia G. Cooke granted the motion and ruled that Plaintiff: (1) was "time-barred from challenging the validity of . . . [the] agreements [between Plaintiff and Landmark] *ab initio*" and (2) "ha[d] failed to state a claim as a matter of law, because the agreements create[d] a perpetual telecommunications easement and unambiguously allow[ed] Landmark to assign its rights to this easement by means of future leases." [ECF Nos. 35; 53].

Landmark now seeks to recover $90,027.70 in attorney's fees and costs pursuant to a fee provision contained in the Purchase and Sale of Telecom Easement and Assignment Agreement ("PSA") between the Association and Landmark. [ECF Nos. 55; 58]. The Association disputes Landmark's entitlement to fees and costs and also argues that the amounts sought are excessive and unreasonable. [ECF No. 56].[1]

Judge Cooke has referred to the Undersigned "all non-dispositive pretrial matters, as well as motions for attorney's fees and costs and motions for sanctions, in accordance with 28 U.S.C. §§ 636(b)(1)(A) and (B)." [ECF No. 18, p. 3]. For the reasons stated below, the Undersigned **respectfully recommends** that the District Court **grant in part and deny**

---

[1]     Plaintiff's response was filed six days late and was incorporated into its motion for leave to file an untimely response. [ECF No. 56]. The Undersigned granted Plaintiff's motion and accepted the late response because the motion for leave was unopposed. [ECF No. 57].

**in part** Landmark's fees motion and award Landmark **$60,441.50** in attorney's fees and

**$3,041.70** in costs.

I.     BACKGROUND

    a.     **The Agreements**

The Association operates an office building located at 330 SW 27th Avenue, Miami,

Florida 33135 ("subject property"). [ECF No. 27, at ¶¶ 8-9, 12]. "The subject property was

submitted to the condominium form of ownership under the declaration of

condominium recorded in the public records of the County of Miami-Dade in official

records book 12280 at page 740 ('Declaration') pursuant to section 718 of the Florida

Statutes." *Id.* at ¶ 10.

In 1996, the then-president of the Association's Board of Directors executed a

Building Lease Agreement ("Lease") between Plaintiff and PCS Primeco, L.P.

("Primeco"), a predecessor to Defendant Cellco. *Id.* at ¶ 13. "The Lease permit[ted] . . .

[Primeco (and later Cellco)] to occupy a 150 square foot portion of the condominium

property rooftop for telecommunication service purposes." *Id.* at ¶ 14. Plaintiff also

granted Primeco a non-exclusive easement which "permit[ted] ingress and egress onto

the common area rooftop for the installation and maintenance of utilities permitted under

the Lease." *Id.* at ¶¶ 18-19.

The Lease was valid for an initial, five-year term beginning on February 20, 1996,

and provided for up to four, five-year extensions. [ECF No. 27-2, at ¶ 3(B)]. If the Lease

was still in effect at the end of all extension periods, then the Lease would continue on the same terms and conditions (other than annual rent) for one-year periods until "terminated by either party by giving . . . written notice" of at least 90 days. *Id.* at ¶ 3(D).

In 2012, Plaintiff's then-president executed a Purchase and Sale of Telecom Easement and Assignment Agreement ("PSA") and an Easement and Assignment of Lease Agreement ("Easement and Assignment Agreement") with Landmark. [ECF Nos. 27-4; 27-5].[2] The PSA and Easement and Assignment Agreement transferred Plaintiff's right, title, and interest in the Lease to Landmark and granted Landmark a perpetual and exclusive easement to the subject portion of the rooftop. *Id.*; [ECF No. 53, p. 2].

### b.    The Instant Action

Plaintiff filed this action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. Landmark removed the action to the United States District Court for the Southern District of Florida based on diversity jurisdiction. [ECF No. 1].

Plaintiff's Third Amended Complaint alleged two counts of declaratory relief and one count of injunctive relief. [ECF No. 27]. In Count I, Plaintiff sought a declaratory judgment that "Landmark [did] not have the power and/or right under the Lease, **PSA**, Assignment and Perpetual Easement to renew the Lease" with Cellco. *Id.* at p. 7

---

[2]    The PSA and the Easement and Assignment Agreement refer to Landmark as "LD Holdings LLC." The parties do not dispute that Landmark is a party to these agreements.

(wherefore clause) (emphasis added). Alternatively, Plaintiff sought a declaratory judgment "that any such power and/or right for Landmark [to renew the lease] constitute[d] a conveyance in violation of section 718.107 of the Florida Statutes and section 4 of the Declaration [of Condominium], making the **PSA**, Assignment and Perpetual Easement void *ab initio* or voidable by Plaintiff[.]" *Id.* (emphasis added).

In Count II, Plaintiff sought a declaratory judgment that "Landmark [did] not have the power and/or right **under the PSA**, Assignment and Perpetual Easement to enter into [a] new lease [with Cellco and/or unknown tenants], or in the alternative, to declare that any such power and/or right constitute[d] a conveyance in violation of section 718.107 of the Florida Statutes and section 4 of the Declaration [of Condominium], **making the PSA**, Assignment and Perpetual Easement void *ab initio* or voidable by Plaintiff[.]" *Id.* at 9 (wherefore clause) (emphasis added).

Lastly, in Count III, Plaintiff sought to "enjoin[ ] Landmark from further entry onto the Property, further ordering that any equipment installed without the authorization of Plaintiff **under the PSA**, Assignment and Perpetual Easement be removed from the condominium property by the owners of such equipment[.]" *Id.* at 10 (wherefore clause) (emphasis added).

Judge Cooke dismissed Plaintiff's Third Amended Complaint, finding that: (1) Plaintiff's claims that the agreements were void *ab initio* were foreclosed by Florida's five-year limitations period, Fla. Stat. §§ 95.11(2)(b) and 95.031(1); (2) the agreements were not

ambiguous as to Landmark's right to renew the lease with Cellco; and (3) the agreements were not ambiguous as to Landmark's right to enter into new leases with third-parties. [ECF No. 53].

Landmark now seeks to recover attorney's fees and costs for having to defend against the Association's claims. [ECF Nos. 55; 58]. In support of its fees and costs motion, Landmark has filed two declarations from its lead attorney, billing records,[3] and two invoices. *Id.*

## II.   ANALYSIS

### a.   Entitlement

#### i.   Attorney's Fees

The party seeking attorney's fees bears the burden of establishing entitlement. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also A.C.L.U. of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) ("[F]ee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." (quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)). Where, as here, the Court's jurisdiction is based on diversity of citizenship, state law governs a party's entitlement to attorney's fees. *See McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001); *Prime Ins. Syndicate, Inc. v.*

---

[3]     Initially, Landmark filed partially redacted billing records. [ECF Nos. 55-1; 58-2]. At the Undersigned's direction, Landmark filed under seal unredacted copies of its billing records. [ECF No. 60].

*Soil Tech Distributors, Inc.*, 270 F. App'x 962, 963 (11th Cir. 2008) (noting that the Eleventh Circuit has "consistently recognized that in diversity cases a party's right to attorney's fees is determined by reference to state law").[4]

"Florida courts follow the 'American Rule' that attorney's fees may only be awarded pursuant to an entitling statute or agreement among the parties." *Am. Family Mut. Ins. Co. v. Alvis*, 72 So. 3d 314, 317 (Fla. 2d DCA 2011) (citing *Dade Cnty v. Pena*, 664 So. 2d 959, 960 (Fla. 1995)). Thus, "[u]nder Florida law, attorney's fees may be awarded to the prevailing party pursuant to a contractual agreement authorizing their recovery." *Hendershott v. Ostuw*, No. 20-CV-80006, 2021 WL 4049305, at *2 (S.D. Fla. Aug. 31, 2021) (citing *Price v. Tyler*, 890 So.2d 246, 250 (Fla. 2004)), appeal dismissed, No. 21-13021-GG, 2021 WL 7286953 (11th Cir. Oct. 19, 2021).

"Florida courts apply a strict construction to agreements providing for the award of attorney's fees." *Dade Sav. & Loan Ass'n v. Broks Ctr., Ltd.*, 529 So. 2d 775, 777 (Fla. 3d DCA 1988) (citation and internal quotation marks omitted). Moreover, "[t]he Court does not have discretion to decline to enforce a contractual provision awarding attorney's fees as such provisions are mandatory." *Krauser v. Biohorizons, Inc.*, No. 10-80454-CIV, 2013 WL 12095204, at *1 (S.D. Fla. Feb. 15, 2013) (citing *Lashkajani v. Lashkajani*, 911 So. 2d 1154, 1158 (Fla. 2005)).

---

[4]     Additionally, the relevant contract -- the PSA -- expressly states that it is governed by Florida law. [ECF No. 27-4, at ¶ 9.a ("This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.")].

Here, Paragraph 9.e of the PSA states, in pertinent part, as follows:

**e. Attorneys' Fees**. **In any action or proceeding brought to enforce any provision of this Agreement**, the prevailing party shall be entitled to an award of its reasonable attorneys' fees and costs, whether through arbitration or a court of competent jurisdiction.

[ECF No. 27-4, at ¶ 9.e (emphasis added)].

Landmark argues that it is entitled to attorney's fees and costs pursuant to this fees provision in the PSA because: (1) it is the prevailing party in this suit and (2) this action falls within the scope of the PSA's fees provision. [ECF No. 55, p. 3].[5] The Association

---

[5]      In its reply brief, Landmark argues, for the first time, that it would also be entitled to attorney's fees pursuant to Fla. Stat. § 57.150(7). [ECF No. 58, p. 2 ("[E]ven if the PSA could be read as a one-sided attorneys' fees provision inuring only to Plaintiff's benefit, Florida law expressly provides for Landmark's recovery of attorneys' fees in that scenario." (citing Fla. Stat. § 57.150(7)))]. The Undersigned rejects this argument for two reasons.

First, Landmark cannot raise a new basis for attorney's fees in its *reply* brief. *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.").

Second, section 57.105(7), which operates to make *unilateral* fee agreements reciprocal, does not apply to the fee provision in the PSA because the fee provision in the PSA is not a unilateral fee provision.

The PSA provides for reasonable attorney's fees and costs to *either* party so long as that party is the prevailing party. *See, e.g.*, *Levy v. Levy*, 326 So. 3d 678, 681 (Fla. 2021) (fee provision which "[did] not confer the right to fees on one identifiable contracting party to the exclusion of the other party" was not unilateral and therefore Fla. Stat. § 57.105(7) did not apply); *Pomales v. Aklipse Asset Mgmt., Inc.*, 336 So. 3d 785, 786 n.2 (Fla. 3d DCA 2022) ("The [t]enants also moved for fees under section 57.105(7) . . . which makes unilateral fee agreements reciprocal. But because the provision in the lease agreement is not unilateral, that statute is inapplicable here.").

contends that the fees provision is inapplicable because the instant action for declaratory and injunctive relief is not an action to **enforce** any provision of the PSA. [ECF No. 56, pp. 3-5].

### 1.     Prevailing Party[6]

"Florida courts apply the definition of 'prevailing party' applied by the United States Supreme Court: a party is a 'prevailing party' if that party succeeds on 'any significant issue' in the litigation which 'achieves some of the benefit the parties sought.'" *Krauser*, 2013 WL 12095204, at *1 (quoting *Hensley*, 461 U.S. at 433).

Here, Judge Cooke ruled against the Association and in favor of Landmark:

This case boils down to the interpretation of a series of agreements concerning a telecommunications easement and lease assignment, entered into between the [A]ssociation and Landmark. For the reasons stated below, **the Court finds that the [A]ssociation is time-barred from challenging the validity of these agreements** *ab initio*. **Moreover, the Court finds that the [A]ssociation has failed to state a claim as a matter of law, because the agreements create a perpetual telecommunications easement and unambiguously allow Landmark to assign its rights to this easement by means of future leases**.

[ECF No. 53, p. 5 (emphasis added)]. Therefore, Landmark is the prevailing party in this action.

---

[6]     Plaintiff does not specifically address Landmark's claim that it is the prevailing party in this case. Plaintiff's failure to address this argument concedes the point. *See Fox v. Hyundai Motor Fin./Hyundai Motor Am.*, No. 20-CV-60936-RAR, 2020 WL 8186267, at *4 n.4 (S.D. Fla. Oct. 29, 2020) ("Because the Response fails to address Defendant's assertions, it concedes them."). Additionally, the Undersigned finds, on the merits, that Landmark is indeed the prevailing party in this case.

2.      **Enforcement Action**

The fee provision in the instant case states, in pertinent part, that "[i]n any action

or proceeding **brought to enforce *any* provision of [the PSA]**, the prevailing party shall

be entitled to an award of its reasonable attorneys' fees and costs, whether through

arbitration or a court of competent jurisdiction." [ECF No. 27-4, at ¶ 9.e (emphasis

added)]. The parties dispute whether the instant action seeking declaratory and

injunctive relief is an action to enforce a provision of the PSA.

Landmark maintains that it is and cites to the Florida Supreme Court's decision in

*Careers USA, Inc. v. Sanctuary of Boca, Inc.*, 705 So. 2d 1362 (Fla. 1998) in support of its

position.

In *Careers USA, Inc.*, a tenant brought an action against its landlord for declaratory

judgment and reformation of a commercial lease. *Id.* at 1362-63. The tenant sought to

resolve a disagreement between the parties concerning when rent payments were due

under the lease. The tenant "alleged that the lease provided for abatement of rent pending

the completion of certain improvements, such that its obligation to pay additional rent

did not commence until December 15, 1994, and the obligation to pay base rent did not

commence until March 15, 1995." *Id.* The landlord argued that the additional rent and the

base rent were due on earlier dates. *Id.* at 1363.

10

The trial court "found the lease agreement was unambiguous and entered partial summary judgment" for the landlord on the declaratory judgment count. *Id.* The tenant voluntarily dismissed the remaining reformation count. *Id.*

The landlord moved for attorney's fees under the lease agreement, which provided: "*[i]n any litigation between the parties hereto to enforce the terms and conditions of this Lease*, the prevailing party shall be entitled to recover all costs incurred in such action, including attorney's fees at all levels from the nonprevailing party." *Id.* (emphasis supplied). The tenant argued that the landlord was not entitled to fees under the lease agreement because the "declaratory judgment action was not litigation to enforce the terms and conditions of the lease, but rather a suit to settle the parties' difference of opinion regarding the lease's interpretation." *Id.* The trial court denied the fees motion.

The landlord successfully appealed this ruling. The Florida Fourth District Court of Appeal reversed the trial court's decision, reasoning that the landlord had to defend the lawsuit "to protect and 'enforce' its rights under the lease" and that "those rights may have been forever foreclosed" had the landlord not defended the case. *Id.* (quoting *Sanctuary of Boca, Inc. v. Careers USA, Inc.*, 691 So. 2d 596, 598 (Fla. 4th DCA 1997)).

The Florida Supreme Court affirmed the intermediate appellate court, finding that the landlord was entitled to fees under the lease:

> **we do not believe that the issue of attorney's fees should be decided by the form of the action chosen by either party**. In this case, [the tenant] sought a judgment declaring rent increases according to its interpretation of the lease. **Determination of the abatement issue directly affected the**

11

**amount of rent [the tenant] would be required to pay (and [the landlord] would receive) under the lease. It matters not whether [the tenant]'s interpretation of the lease was sustained in a declaratory judgment action rather than a breach of contract action**. As noted by the court below, "[t]his attempted distinction belies the true nature of the relief sought in both cases and ignores the force and effect of a final declaratory judgment." *Careers*, 691 So. 2d at 598. In either event, **there has been a legal determination that [the landlord] is entitled to additional rent. We hold that [the landlord] is entitled to attorney's fees because it successfully "enforced the terms and conditions" of the lease**.

*Id.* at 1364 (emphasis added).

At the same time, the Florida Supreme Court "caution[ed] that because the variation in the wording of attorney's fees provisions is virtually limitless, [its] decision . . . [did] not eliminate the responsibility of courts to scrutinize the language of a particular attorney's fees clause to determine whether fees are appropriate." *Id.* It noted that it was "merely hold[ing] that for the purpose of awarding attorney's fees to a prevailing party, a suit for declaratory judgment may constitute an action to enforce the terms and conditions of a lease or other written instrument." *Id.*

Landmark argues that the result here should be the same as in *Careers USA, Inc.* [ECF No. 55, p. 3]. It notes that "[i]n the Third Amended Complaint (as well as prior pleadings), Plaintiff expressly sought declaratory relief interpreting the terms of the PSA and the parties' rights and obligations thereunder" and "Plaintiff also sought an injunction relating to the provisions of the PSA." *Id.*

Plaintiff argues that *Careers USA, Inc.* is distinguishable from the instant case because "[t]he litigation between the parties in *Careers* was related to the enforcement of

a specific term of the lease between the parties, specifically, the rent abatement provision of the lease," whereas, in the instant case, there is no specific provision Plaintiff sought to enforce. [ECF No. 56, pp. 4-5]. Plaintiff notes that its "[T]hird [A]mended [C]omplaint did not allege that Landmark had violated any provision of the PSA," "[made] no reference to any provision in the PSA . . . Plaintiff sought to enforce," and "did not make a demand [for] attorney's fees . . . because Plaintiff did not seek to enforce any provision of the PSA." *Id.* at 3.

Plaintiff further contends that it "attached the PSA to its [T]hird [A]mended [C]omplaint and referred generally to the PSA to glean the intent of the parties and present a full contractual context to the Court" but "did not bring the action to enforce a provision of the PSA, because . . . Plaintiff did not identify or reference any provision it sought to enforce in its [T]hird [A]mended [C]omplaint and did not seek recovery of attorney's fees." *Id.* at 5.

It is well established that "[a]ttorney's fees are not necessarily recoverable as to any and all litigation relating to a contract that provides for attorney's fees." *Bowman v. Kingsland Dev., Inc.*, 432 So. 2d 660, 664 (Fla. 5th DCA 1983). Nonetheless, "[a] declaratory judgment action which results in the enforcement of a contractual term may entitle a party to recover attorney's fees if the contract so provides." *Id.*; *see also Careers USA, Inc.*, 705 So. 2d at 1364 ("[H]old[ing] that for the purpose of awarding attorney's fees to a prevailing party, a suit for declaratory judgment may constitute an action to enforce the

terms and conditions of a lease or other written instrument."); *Kohlmeier v. Diversified Drilling Corp.*, 898 So. 2d 884 (Fla. 2d DCA 2005) (citing *Careers* and awarding fees to prevailing party in declaratory judgment action).

As the Florida Supreme Court cautioned, courts must "scrutinize the language of a particular attorney's fees clause to determine whether fees are appropriate." *Careers USA, Inc.*, 705 So. 2d at 1364. Here, the relevant language of the fee provision states: "**In *any* action or proceeding brought to enforce any provision of [the PSA]**, the prevailing party shall be entitled to an award of its reasonable attorneys' fees and costs, whether through arbitration or a court of competent jurisdiction." [ECF No. 27-4, at ¶ 9.e (emphasis added)]. For the reasons discussed herein, the Undersigned finds that the instant action -- though couched in terms of declaratory and injunctive relief -- *is* an action to enforce the PSA, among other agreements.

Plaintiff contends that it "attached the PSA to its [T]hird [A]mended [C]omplaint and referred generally to the PSA to glean the intent of the parties and present a full contractual context to the Court." [ECF No. 56, p. 5]. However, a review of the allegations in Plaintiff's Third Amended Complaint undercut this contention.

Count I of the Third Amended Complaint sought declaratory relief with respect to Landmark's right and/or power under the parties' various agreements (including the PSA) to renew the existing lease with Cellco:

> 36. There is a question of actual controversy between Plaintiff and Defendants, concerning the right and/or power of Landmark to renew the

14

Lease with Cellco, **under the PSA, Perpetual Easement and/or Assignment**.

37. Plaintiff avers Landmark does not have the right and/or power **under the Lease, PSA, Assignment and Perpetual Easement** to renew the Lease with Cellco because Landmark does not have possessory, or ownership interest to the property subject to the Lease.

[ECF No. 27, at ¶¶ 36-37 (emphasis added)].

In Count I, Plaintiff also averred, in the alternative, that if Landmark did have the right and/or power to renew the lease under the aforementioned agreements, "that such power and/or right – being perpetual or otherwise indefinite in its duration – constitute[d] a sale or conveyance of the common elements in violation of section 718.107 of the Florida Statutes and section 4 of the Declaration and, therefore, [was] void *ab initio* or otherwise voidable by Plaintiff." [ECF No. 27, at ¶ 40].

Count II of the Third Amended Complaint sought declaratory relief with respect to Landmark's right and/or power under the parties' various agreements (including the PSA) to enter into new leases:

42. There is a question of actual controversy between Plaintiff and Defendants, concerning the right and/or power of Landmark to enter into a new lease with Cellco or new leases with unknown tenants, **under the PSA, Perpetual Easement and/or Assignment**.

43. Plaintiff avers Landmark does not have the right and/or power to enter into a new lease with Cellco and/or unknown tenants **under the PSA, Perpetual Easement and/or Assignment** because Landmark does not have possessory, or ownership interest to the property subject to the Lease.

*Id.* at ¶¶ 42-43 (emphasis added). As it did in Count I, Plaintiff again averred in Count II, in the alternative, that if Landmark did have this right to enter into new leases, that right was void *ab initio* or otherwise voidable.

Lastly, in Count III, Plaintiff sought injunctive relief. *Id.* at ¶¶ 52-56. Specifically, Plaintiff sought

> the entry of a judgment in its favor enjoining Landmark from further entry onto the Property, further ordering that any equipment installed without the authorization of Plaintiff **under the PSA, Assignment and Perpetual Easement** be removed from the condominium property by the owners of such equipment, and such further relief as is just and proper.

*Id.* at 10 (wherefore clause) (emphasis added).

It is clear from the above excerpts of the Third Amended Complaint that Plaintiff included a copy of the PSA not merely to provide "contractual context" or to "glean the intent of the parties", [ECF No. 56, p. 5], but, rather, to obtain a full judicial determination of Landmark's right to renew or enter into new leases under these agreements. The instant action -- albeit declaratory and injunctive in nature -- *is* an action brought to enforce a provision of the PSA (and other agreements between the parties).

By bringing this action, Plaintiff sought to enforce the terms of the PSA (and other agreements) which, under Plaintiff's reading of those agreements, prohibited Landmark from renewing the existing lease with Cellco or entering into any new leases and required the removal of unauthorized equipment.

16

In its response in opposition to Landmark and Cellco's joint motion to dismiss the Third Amended Complaint, for instance, Plaintiff asserted that it was the "Association's position that **the plain terms of the PSA and Perpetual Easement do not give Landmark the express right and/or power to renew the Lease with Cellco or enter into new leases** with Cellco or third parties unrelated to Cellco." [ECF No. 38, p. 13 (emphasis added)].

Plaintiff's argument that the instant action is not an enforcement action because Plaintiff did not seek to enforce a specific provision of the PSA is not persuasive. As illustrated by the excerpts quoted above, Plaintiff's Third Amended Complaint sought a determination of Landmark's rights under the PSA (and the other agreements) to renew the existing lease and enter into new leases. The nature of Plaintiff's lawsuit (and the relief it sought) does not change simply because Plaintiff did not cite, by paragraph number, the specific provision(s) it was seeking to enforce.

"The purpose of a declaratory judgment is to determine the rights and duties of the parties without the need to resort to a tort or contract action as a prerequisite to a judicial determination." *Price v. Tyler*, 890 So. 2d 246, 251 (Fla. 2004). Here, the Association brought this action to enforce the parties' agreements -- though it wanted the Court to construe the agreements differently from the way Landmark construed them. Ultimately, the agreements were enforceable as written, not in the way Plaintiff sought to have them interpreted in the Third Amended Complaint.

In other words, by filing this action for declaratory judgment and injunctive relief, Plaintiff was seeking to declare and enforce its rights under the agreements (including the PSA) and to compel Landmark to adhere to Plaintiff's interpretation of the agreements. The instant action was Plaintiff's attempt to compel Landmark's obedience to Plaintiff's interpretation of the agreements between the parties.

Moreover, while Landmark did not "bring" any action, by defending this suit, it was seeking to preserve and enforce the agreements as they were written. In other words, in defending against Plaintiff's claims for declaratory and injunctive relief, Landmark was enforcing its rights under the agreements (including the PSA). *See Careers USA, Inc.*, 691 So. 2d at 598 ("[I]n order to protect and 'enforce' its rights under the lease, [the defendant] was required to defend the action. Had [the defendant] not appeared in the declaratory action to defend its right to collect the amount it claimed, those rights may have been forever foreclosed; the trial court may have made a determination that [the defendant] was not entitled to collect the rent it claimed."); *Freeman v. Rice*, No. 09-20352-CIV, 2012 WL 12948864, at *1 (S.D. Fla. Nov. 9, 2012) ("In order to 'enforce' [his] rights under the Lease Agreement, [the defendant] had to defend [the plaintiff's] appeal of the federal suit, and a fee award for the appeal [was] therefore warranted.").

In *Escambia Cnty. v. U.I.L. Fam. Ltd. P'ship*, 977 So. 2d 716 (Fla. 1st DCA 2008), real estate developers brought an action against the county for declaratory and injunctive relief seeking to obtain permits pursuant to a contract (guarantee) with the county. The

contract contained the following fee provision: "If [the] [c]ounty ever has to file a judicial action to enforce any provision of this guarantee, then [the developers] agree to reimburse [the] [c]ounty for all of its costs, including reasonable attorney's fees through appeal, if necessary, that it may have incurred in enforcing this guarantee." *Id.* at 717.

In affirming the trial court's award of attorney's fees for the developers, the appellate court noted that:

> By its plain language, **[the] fee provision envision[ed] a lawsuit in which the parties litigate[d] their rights and obligations under the guarantees, which would inevitably result in a judicial construction of the contract language.** The declaratory action brought by the [d]evelopers differs from the action envisioned in the contract only with respect to who sat on each side of the courtroom.

*Id.* The appellate court found "no basis to conclude that the [d]evelopers' lawsuit, **even though it sought declaratory and injunctive relief**, so differed from the enforcement action envisioned in the guarantees that section 57.105[7] would not apply to award the [d]evelopers reciprocal attorney's fees." *Id.* (footnote added; emphasis added).

Similarly here, there is little difference between the declaratory judgment action filed by the Association and an action to enforce the PSA by means of a breach of contract claim. Both actions would require the Court's adjudication of the parties' rights and obligations under the PSA. It makes little difference that the Association brought this action for declaratory relief in anticipation of Landmark's purported breach of the parties'

---

[7]      As discussed above, section 57.105(7) makes unilateral fee provisions reciprocal. *Pomales*, 336 So. 3d at 786 n.2.

agreements or if the Association had waited until Landmark either renewed the existing lease with Cellco or entered into a new lease and then brought an action for breach of contract based on the Association's reading of the parties' agreements.

To be sure, "[a]ttorney's fees are not necessarily recoverable as to any and all litigation relating to a contract with an attorney's fees clause." *Vill. 45 Partners, LLC v. Racetrac Petroleum Inc.*, 831 So. 2d 758, 760 (Fla. 4th DCA 2002) (grantee was not entitled to attorney's fees under restrictive covenant because prospective buyer who initiated the declaratory judgment action was not a successor or assignee under the covenant and the subject fee provision required a violation or attempted violation of the covenant by the losing party); *S.K. Condo. II Ass'n, Inc. v. NS/CSE Siesta Key, LLC*, 290 So. 3d 614, 616 (Fla. 2d DCA 2020) (in action for declaratory and injunctive relief, the prevailing defendant was not entitled to attorney's fees because fee provision required a showing of non-compliance with a contractual provision by the losing party); *Dade Sav. & Loan Ass'n v. Broks Ctr., Ltd.*, 529 So. 2d 775, 777 (Fla. 3d DCA 1988) (reversing award of attorney's fees in "declaratory judgment action [which] resulted only in the determination of the correct method of valuation for appraisal purposes, a matter ancillary to the actual contract of sale"); *Chesterfield Co. v. Ritzenheim*, 350 So. 2d 15, 16 (Fla. 4th DCA 1977) (landlord who prevailed in defending against declaratory action was not entitled to contractual attorney's fees because fee provision required a breach of the lease).

However, the instant declaratory action *does* fall within the scope of the PSA's fee provision. The fact that Plaintiff did not obtain the outcome it had envisioned does not mean the instant action was not an action to enforce the parties' contractual agreements. Plaintiff sought (and obtained) a judicial determination of Landmark's contractual rights under the parties' various agreements (including the PSA) to renew the existing lease and to enter into new leases.

Moreover, although only the PSA contains a fee provision, Plaintiff's claims for declaratory and injunctive relief concern all of the parties' agreements (including the PSA). "When facts supporting all causes of action are so intertwined that apportionment is not feasible, the court may award the prevailing party all attorney's fees." *Weitz Co., LLC v. Transportation Ins. Co.*, No. 08-23183-CIV, 2009 WL 5064118, at *4 (S.D. Fla. Dec. 16, 2009) (citing *Davis v. Locke*, 936 F.2d 1208, 1214 (11th Cir. 1991)).

The claims here are inextricably intertwined such that Defendant is entitled to reasonable attorney's fees under the PSA for all of the work performed in this case. *See Am. Infoage, LLC v. Regions Bank*, No. 8:13-CV-1533-T-23JSS, 2016 WL 7733983, at *8 (M.D. Fla. Dec. 7, 2016), report and recommendation adopted, No. 8:13-CV-1533-T-23JSS, 2017 WL 111601 (M.D. Fla. Jan. 11, 2017) ("[E]ach claim brought against [the defendant] . . . [was] sufficiently interrelated and intertwined so as to warrant the recovery of attorneys' fees, regardless of whether,. . . [promissory] [n]otes authorize fees for only certain claims."); *Pretka v. Kolter City Plaza II Inc.*, No. 09-80706-CIV, 2013 WL 7219294, at *2 (S.D.

21

Fla. Sept. 11, 2013) (finding movant was entitled to recover fees for both counts under the agreement where "[t]he language 'to enforce any of [the] terms and provisions of the [a]greement' [could] certainly apply to all claims 'inextricabl[y] intertwined' with the contract.").

Landmark, as the prevailing party, is entitled to recover its reasonable attorney's fees under paragraph 9.e of the PSA.

### ii.       Fees on Fees

Some of the attorney's fees sought by Landmark are fees incurred in connection with the preparation and filing of its fees motion, reply brief, attorney declarations, and supporting documentation. Fees incurred for litigating the amount of attorney's fees are sometimes referred to as "fees on fees." *Nazarova v. Nayfeld*, No. 3D21-1940, 2022 WL 1560679, at *1 (Fla. 3d DCA May 18, 2022).[8]

Because this is a diversity action, the Court must follow Florida law on this issue. *McMahan*, 256 F.3d at 1132. Fees on fees are generally not recoverable under Florida law. *See N. Dade Church of God, Inc. v. JM Statewide, Inc.*, 851 So. 2d 194, 196 (Fla. 3d DCA 2003) ("It is settled that in litigating over attorney'[s] fees, a litigant may claim fees where entitlement is the issue, but may not claim attorney's fees incurred in litigating the amount of attorney's fees.").

---

[8]       Landmark does not separately address its entitlement to fees on fees.

22

Some courts in Florida have determined that if a fee award is sought pursuant to a contract, and the contractual provision is broad enough, that fees on fees may be awarded. *See Burton Fam. P'ship v. Luani Plaza, Inc.*, 276 So. 3d 920, 923 (Fla. 3d DCA 2019) (finding no error in trial court's award of fees on fees where the "[b]y-[l]aws allow[ed] for the recovery of fees 'for litigating the issue of the amount of fees to be awarded' in both the trial and appellate proceedings"); *Windsor Falls Condo. Ass'n, Inc. v. Davis*, 265 So. 3d 709, 711 (Fla. 1st DCA 2019) ("Although we do not reject the argument that a contract can provide for an award of attorney's fees, including fees incurred for litigating the fee amount itself, we hold that the trial court did not err in denying [the] [a]ppellant such an award."); *Waverly at Las Olas Condo. Ass'n, Inc. v. Waverly Las Olas*, LLC, 88 So. 3d 386, 389 (Fla. 4th DCA 2012) (contract provision which permitted "attorney's fees for 'any litigation' between the parties under the agreement" was "broad enough to encompass fees incurred in litigating the amount of fees").

Here, the fee provision in the PSA -- which provides for fees "[i]n any action or proceeding brought **to enforce any provision of this Agreement**"[9] -- is not sufficiently broad enough to include fees on fees. *See, e.g.*, *Pretka*, 2013 WL 12080754, at *1 (fees on fees were not recoverable where language in agreement provided for fee award in "'litigation **to enforce' the terms and provisions of [the] [a]greement**") (emphasis added); *Nazarova*, 2022 WL 1560679, at *1 (contract provision which provided for

---

[9]      [ECF No. 27-4, at ¶ 9.e (emphasis added)].

attorney's fees "[i]n any lawsuit brought **to enforce the [l]ease**" was not broad enough to include fees on fees) (emphasis in original). Therefore, the Court should follow the general rule in Florida which prohibits the recovery of fees on fees.

Landmark should be permitted to recover fees incurred in litigating the issue of entitlement but cannot recover any fees for litigating the *amount* of fees -- so-called "fees on fees."

### iii.      Costs

Landmark also seeks to recover costs. The PSA provides that "[i]n any action or proceeding brought to enforce any provision of this Agreement, the prevailing party shall be entitled to an award of its reasonable attorneys' fees **and costs**[.]" [ECF No. 27-4, at ¶ 9.e (emphasis added)]. Thus, Landmark is also entitled to recover reasonable costs under the PSA.

### b.      Amount

Landmark seeks to recover $90,027.70 ($82,007.00 plus $4,438.00 in attorney's fees and $3,582.70 in costs). [ECF Nos. 55; 58].

Plaintiff disputes the reasonableness of the fees sought in this case (but does not specifically address the costs). It contends this was not a complex or protracted case.[10]

---

[10]      Plaintiff states that:

The length of this case is not indicative of its complexity or true duration. Proceedings were substantially delayed by the advent of the coronavirus pandemic. This matter involved mainly questions of law with minimal

[ECF No. 56, p. 5]. It argues that Landmark's "fees are excessive and unreasonable" and provides the following, categorical example: "a significant part of the bills are for emails and conferences, not legal research and/or writing. For example, Landmark's counsel billed approximately $12,285.50 for reading and sending emails and $2,774.50 for phone calls and conferences." *Id.*[11]

Plaintiff identifies a few time entries which appear -- *to Plaintiff* -- to be unrelated to this case, either because they refer to "Serengeti" or because they include the names of people (David Levin and Stan Blake) who purportedly are not involved in this case. Plaintiff also asserts that "[v]arious entries lack sufficient descriptors to trace to the

---

discovery. Proceedings scarcely extended beyond the pleading stage. The nature and course of the case does not justify billing approximately 260 hours of time. To bill the equivalent of 32 business days of work for this case is extreme and excessive.

[ECF No. 56, p. 6].

Landmark argues that Plaintiff's characterization of the case is "misleading" because "substantial work [was] done in this case, which include[d] removal to federal court, fully briefing (and prevailing on) two motions to dismiss, taking three depositions, and engaging in multiple, albeit unsuccessful, mediation sessions." [ECF No. 58, p. 5].

[11]   Plaintiff does not list the time entries it includes in these categories, which total these amounts. As such, the Undersigned is unable to verify these figures.

case."[12] According to Plaintiff, "[t]he [billing] invoices are replete with inconsistencies and errors and must not be taken at face value." *Id.*

In its reply, Landmark asserts that Plaintiff's objections are baseless. [ECF No. 58, p. 5]. Landmark explains that the term "Serengeti" refers to an "e-billing and matter management platform." *Id.* at 5 n.2 (citation omitted). Landmark further explains that Stan Blake was a potential mediator proposed by Plaintiff but does not explain who David Levin is or what his relationship is to this case. *Id.* at 5.

Landmark's reply also points out that Plaintiff's response does not comply with Local Rule 7.3(a). *Id.* at 4-5.

Local Rule 7.3(a) requires the responding party to "describe with reasonable particularity **each time entry or nontaxable expense to which it objects**, both as to issues of entitlement and as to amount, and . . . provide supporting legal authority." S.D. Fla. L.R. 7.3(a) (emphasis added); *see also Joynt v. JW Lee, Inc.*, No. 20-61580-CIV, 2020 WL 6927637, at *4 (S.D. Fla. Nov. 6, 2020) (noting that response which "generally [argued] that . . . billing entries for filing, conferring with opposing counsel, reviewing non-substantive pleadings and pulling case law . . . were not reasonably necessary" did not comply with Local Rule 7.3(a)), report and recommendation adopted, No. 20-61580-CIV, 2020 WL 6914550 (S.D. Fla. Nov. 24, 2020).

---

[12]     Plaintiff states that there are two examples of these nondescript entries on page 61 of ECF No. 55. [ECF No. 56, p. 6]. But, there are 15 time entries on that page and it is unclear which two time entries are referred to by Plaintiff.

Plaintiff's response -- consisting of general complaints about Defendant's time entries, accompanied by a few examples -- does not comport with the requirements of Local Rule 7.3(a).

Additionally, it is readily apparent to the Undersigned that Plaintiff failed to meaningfully confer with Defendant as required by Local Rule 7.3(b), which states as follows:

> **Good Faith Effort to Resolve Issues by Agreement**. Except as to any aspect of a fee claim upon which the parties agree, a draft motion compliant with Local Rule 7.3(a)(1)-(8) must be served but not filed at least thirty (30) days prior to the deadline for filing any motion for attorneys' fees and/or costs that is governed by this Local Rule. **Within twenty-one (21) days of service of the draft motion, the parties shall confer and attempt in good faith to agree on entitlement to and the amount of fees and expenses not taxable under 28 U.S.C. § 1920. The respondent shall describe in writing and with reasonable particularity each time entry or nontaxable expense to which it objects, both as to issues of entitlement and as to amount, and shall provide supporting legal authority**. If a federal statute provides a deadline of fewer than sixty (60) days for a motion governed by Local Rule 7.3(a), the parties need not comply with this paragraph's requirements.

S. D. Fla. L. R. 7.3(b) (emphasis added).

The purpose of Local Rule 7.3(b) is to conserve judicial resources. *See Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty. Fla.*, No. 20-CV-21084, 2021 WL 6932163, at *5 (S.D. Fla. Aug. 18, 2021) ("Local Rule 7.3(b) provides a detailed and clear mechanism to assist parties in resolving attorney's fees and costs disputes by agreement prior to submitting the dispute to the District Court for adjudication."), report and recommendation adopted, No. 20-21084-CIV, 2022 WL 42437 (S.D. Fla. Jan. 5, 2022).

27

Issues such as the misunderstanding over the Serengeti platform or Stan Blake's relevance to the case are *precisely* the issues which could have (and should have) been weeded out during a proper Local Rule 7.3(b) conferral.

Failure to comply with the Local Rules may result in the waiver of objections. *See, e.g., Club Madonna, Inc. v. City of Miami Beach*, No. 13-23762-CIV-LENARD, 2015 WL 5559894, at *9 (S.D. Fla. Sept. 22, 2015) ("The Court is not so lenient when a party flippantly disregards the Local Rules—especially rules that are designed to conserve the Court's resources—and finds that Plaintiffs waived their objections to the City's fee request as to Count II by failing to comply with Local Rule 7.3(b).").

Notwithstanding the aforementioned non-compliance, the Undersigned will address the reasonableness of the fees and costs sought in this case.

### i.     Attorney's Fees

The Court must determine whether the requested amount of fees is reasonable. This Court uses the "'lodestar' method to determine reasonable attorneys' fees in a diversity case governed by Florida law." *Marlite, Inc. v. Eckenrod*, No. 09-22607-CIV, 2012 WL 12948748, at *1 (S.D. Fla. Nov. 16, 2012). Under the lodestar method, reasonable attorney's fees are calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley*, 461 U.S. at 43).

The resulting fee carries a presumption that it is reasonable. *Blum v. Stenson*, 465 U.S. 886, 897 (1984). This lodestar amount may then be adjusted upward or downward based upon other considerations. *Hensley*, 461 U.S. at 433-37. The moving party bears the burden of documenting the reasonableness of the hours expended and the hourly rate. *Barnes*, 168 F.3d at 427.

### 1.      Reasonable Hourly Rate

The Court must evaluate the reasonableness of counsel's hourly rate. The Eleventh Circuit defines a "reasonable hourly rate" as "the prevailing market rate in the relevant legal community for similar services by attorneys with reasonably comparable skills, experience, and reputation. *Norman*, 836 F.2d at 1299 (citing *Blum*, 465 U.S. at 895-96 n.11). "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Id.* at 1302 (internal citation omitted).

In determining the prevailing market rate, the Court should consider several factors, including: "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (discussing factors set out in *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 717-18 (5th Cir. 1974)).

Here, the hourly rates sought by Landmark range from $410.00 to $230.00 for five attorneys and $225.00 for paralegal Stacy E. Loft. Local Rule 7.3(a)(5)(A) requires the party moving for fees to state "the identity, experience, and qualifications for each timekeeper for whom fees are sought." S.D. Fla. L.R. 7.3(a)(5)(A). Landmark has filed two declarations from its lead attorney, Robert F. Tom. In the first declaration, Mr. Tom provides the relevant background information for each of the attorney timekeepers. [ECF No. 55-1].

Plaintiff does not challenge the reasonableness of the hourly rates sought in this case. Nonetheless, the Court must still ensure that the fees it awards are reasonable. *See Valley v. Ocean Sky Limo*, 82 F. Supp. 3d 1321, 1325 (S.D. Fla. 2015) ("[T]he Court has an independent obligation to review fee motions and bills of costs to independently determine whether the hourly rates sought are reasonable, the number of attorney hours sought are reasonable, and that the costs sought to be taxed are properly taxable pursuant to the cost statute."); *see also Kelly v. Lee Cnty. R.V. Sales Co.*, No. 8:18-CV-424-T-27JSS, 2021 WL 3111553, at *2 (M.D. Fla. July 22, 2021) (reducing hourly rates of two timekeepers despite no challenge to the hourly rates by the opposing party).

Based on the Undersigned's own experience concerning reasonable hourly rates in this legal community, the Undersigned finds the hourly rates for the attorney timekeepers to be within the range of rates charged for similar services by attorneys of reasonably comparable skill, experience, and reputation. However, the hourly rate of

$225.00 for paralegal Loft is not reasonable. Mr. Tom's declaration does not provide any information concerning Ms. Loft's background and experience.

In instances where a movant fails to provide information concerning a timekeeper's experience and qualifications, courts in this District have reduced the requested hourly rate. *See, e.g., CityPlace Retail, L.L.C. v. Wells Fargo Bank, N.A.*, No. 18-CV-81689, 2021 WL 3361172, at *7 (S.D. Fla. Jan. 12, 2021) (reducing hourly rate for paralegal services to $125.00 "[w]here there is no information regarding experience level and qualifications in the professional biographies provided by the [movant]"); *Glob. Digital Sols., Inc. v. Grupo Rontan Electro Metalurgica, S.A.*, No. 18-80106-CV, 2021 WL 7630524, at *2 (S.D. Fla. Aug. 16, 2021) (reducing hourly rate to $125.00 for those paralegals which movant failed to provide information regarding experience level). Accordingly, the Undersigned recommends reducing Ms. Loft's rate to $125.00 per hour.

### 2. Reasonable Hours Expended

The Court must next evaluate the reasonableness of the total hours expended by Landmark's counsel. The moving party bears the burden of providing the Court with sufficiently detailed records so that the Court can assess the time claimed for each activity. *Norman*, 836 F.2d at 1303; *see also Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 9364952, at *14 (S.D. Fla. July 15, 2011) ("A party seeking to recover attorneys' fees bears the burden of providing specific and detailed evidence so that a determination

can be made of the necessity of the action and the reasonableness of the time claimed for the action." (citing *Barnes*, 168 F.3d at 427, 432-33)).

The party requesting fees must exercise "billing judgment" and must exclude from its fees motion hours that would be unreasonable to bill a client, and therefore to one's adversary, "irrespective of the skill, reputation, or experience of counsel." *Norman*, 836 F.2d at 1301.

In determining the number of hours reasonably expended, the Court must exclude "excessive, redundant or otherwise unnecessary hours" from those claimed. *Id.* at 1303. This task may be accomplished by either applying an hour-by-hour analysis or making an across-the-board cut. *See Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). Judges "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436).

Landmark asserts that the law firm of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC expended a total of 260.10 hours (246.70 hours through October 31, 2021 plus an additional 13.40 hours for November and December 2021) defending this action. Landmark has filed a declaration and a supplemental declaration from its lead attorney

and detailed billing records documenting the time spent litigating this case. [ECF Nos. 55-1; 58-2; 60-1; 60-2].

The Undersigned has reviewed the documents submitted in support of the requested fees and finds that some reductions are warranted to account for excessive time spent on certain tasks, duplicative work, and "fees on fees."

### a.    Excessive Time and/or Duplicative Work

As noted above, Landmark argues that "substantial work [was] done in this case, which include[d] removal to federal court, fully briefing (and prevailing on) two motions to dismiss, taking three depositions, and engaging in multiple, albeit unsuccessful, mediation sessions." [ECF No. 58, p. 5].

Some of the time spent by Landmark's counsel on these tasks is excessive and/or duplicative. For instance, Landmark's attorneys billed approximately 6.10 hours for work related to the notice of removal (3.20 hours for drafting, revising, or preparing the notice, 1.10 hours for researching or reviewing caselaw, 0.40 hours for drafting and reviewing the civil coversheet attached to the notice (a form which merely requires counsel to check boxes), and 1.40 hours spent on miscellaneous tasks such as "evaluat[ing] issues pertaining to removal" and conferring by phone and email with counsel for Verizon/Cellco). [ECF No. 55-1, pp. 8-10]. The time spent on this task is not reasonable for a five-page notice of removal (excluding the certificate of service) based on diversity of citizenship.

The billing records also show that attorney Robert F. Tom billed 0.20 hours for "[c]oordinat[ing] [the] filing of [a] motion for extension of time and proposed order" and 1.90 hours for "prepar[ing] motion for extension of time and proposed order." [ECF No. 55-1, p. 11]. These time entries are duplicative and excessive. Additionally, the motion for extension of time [ECF No. 3] was an agreed, three-page motion and the proposed order was a standard, two-page document. The time records do not reveal anything unusual about this agreed motion which would justify spending a total of 2.10 hours on this task.

Mr. Tom also billed 0.30 hours for preparing the "magistrate election form." [ECF No. 55-1, p. 23]. This is a one-page, pre-printed form which simply requires counsel to check "yes" or "no" next to three categories of motions (motions for costs, motions for attorney's fees, and motions for sanctions). [ECF No. 21, p. 8]. This amount (0.30 hours) does not include an additional 0.20 hours billed by Mr. Tom for conferring by email with other counsel concerning this form and the scheduling order. [ECF No. 55-1, p. 23]. This amount (0.30 hours) is an unreasonable amount of time to bill for completing a simple, one-page form.

Mr. Tom also billed a total of 1.40 hours reviewing the Local Rules, drafting, and finalizing a two-page Notification of Ninety Days Expiring. [ECF Nos. 25; 55-1, pp. 27, 30]. Again, this is an excessive amount of time to bill for completing this simple task.

Mr. Tom and attorney Zachary A. Kisber billed a total of 1.50 hours for a simple, agreed two-page motion for extension of time to respond to the Third Amended

Complaint. [ECF Nos. 29; 55-1, pp. 36-37]. This is an excessive amount of time for this task. Additionally, the work performed by Mr. Tom and Mr. Kisber is duplicative and this agreed motion did not require two attorneys, one of whom is a shareholder.

Other examples of excessive time include the two motions to strike Plaintiff's jury demand. [ECF Nos. 8; 33]. The first motion seeks to strike the jury demand in the Second Amended Complaint. [ECF No. 8]. It is an eight-page motion based on Plaintiff's contractual waiver of a trial by jury. *Id.* Landmark's counsel spent a total of 8.20 hours (7.00 hours preparing, drafting, or revising the motion and an additional 1.20 hours analyzing case law) on this relatively straightforward motion. [ECF No. 55-1, pp. 9-10, 13]. The Undersigned finds 8.20 hours to be excessive given the length and substance of Defendant's first motion to strike the jury demand.

The second motion seeks to strike the jury demand in the Third Amended Complaint. [ECF No. 33]. It was not opposed by Plaintiff (or co-defendant Cellco) and states so in the motion. *Id.* at 7. Nonetheless, Landmark's counsel billed 2.00 hours for drafting, reviewing, and revising this second motion based on the same contractual waiver and raising the same arguments raised in the original motion to strike the jury demand.

Landmark's counsel also billed a total of 1.20 hours for "[p]reparing [a] notice of filing of complete PSA" (0.50), "[e]valuat[ing] issues pertaining to full copy of PSA" (0.50), and "[f]inaliz[ing] notice of filing PSA and preparing same for filing" (0.20). [ECF

No. 55-1, pp. 83-84]. This was a simple notice of filing with attached exhibits, [ECF No. 54], and should not have taken 1.20 hours to complete. In addition to the 1.20 hours billed by attorney Tom, Mr. Kisber billed 0.20 to review the notice and 0.20 hours to "[e]valuate issues" regarding compliance with the Court's instructions concerning the notice of filing and Mr. Tom billed 0.20 hours to exchange emails with counsel for Verizon/Cellco regarding the notice of filing. *Id.* p. 84. This additional 0.60 hours for a simple notice of filing is unreasonable. Additionally, Mr. Kisber's time is duplicative of Mr. Tom's efforts.

Landmark's counsel's billing records also reveal excessive time spent on work related to the two motions to dismiss. While the motions to dismiss were well-taken and Landmark ultimately prevailed on its second motion to dismiss, the time billed for these motions and their corresponding replies is excessive and must be reduced.

For example, Landmark's counsel billed approximately 26.20 hours (1.20 hours preparing for drafting the motion, 17.50 hours for drafting or revising the motion, and 7.50 hours researching, analyzing, or evaluating issues related to the motion) for the first motion to dismiss [ECF No. 9] and approximately 13.70 hours (1.70 hours preparing for drafting the reply, 8.40 hours drafting or revising the reply, and 3.60 hours researching and reviewing case law) for the reply in support of the first motion to dismiss [ECF No. 20]. Landmark's counsel also billed approximately 7.90 hours (1.70 hours for reviewing or evaluating issues, 0.60 hours for communicating with counsel for Verizon/Cellco, and 5.60 hours for drafting or revising the motion) for the second motion to dismiss [ECF No.

35] and approximately 11.60 hours (1.80 hours reviewing documents or evaluating issues, 0.60 hours communicating with Verizon/Cellco's counsel, 8.20 hours drafting or revising the reply and 1.00 hour of legal research) for the reply in support of the second motion to dismiss [ECF No. 39]. [ECF No. 55-1, pp. 8-10, 13, 18-19, 36-37, 40-41, 45].

At the outset, the Undersigned notes that the first motion to dismiss was 18 pages (including the certificate of service). The 17.50 hours billed (almost one hour per page) for drafting/revising the first motion to dismiss is not reasonable. The 17.50 hours billed for drafting/revising the motion is in addition to the 8.70 hours billed for preparing for drafting the motion and researching, analyzing and evaluating issues.

The second motion to dismiss was 15 pages (with the certificate of service) and the amount of time billed for drafting this motion (5.60 hours) was significantly less than the amount of time billed for drafting the first motion to dismiss, though still excessive. The Undersigned notes that there was some overlap between the two motions (standard of review, some legal arguments, some case law) such that the amount of time billed for the second motion to dismiss should be reduced. While the Undersigned does not expect counsel to reinvent the wheel and some overlap is indeed expected given the similarities between the Second Amended Complaint and the Third Amended Complaint, the billing records reflect an excessive amount of time for the two motions to dismiss.

The same is true for the two replies. Counsel for Landmark billed approximately 13.70 hours for the first reply [ECF No. 20] and approximately 11.60 hours for the second

reply [ECF No. 39]. The first reply is eight pages (including the certificate of service) and the second reply is nine pages (including the certificate of service). A review of the two replies reveals that there is some overlap between the legal arguments and legal authorities included in the two documents. The amount of time billed for the replies -- 13.70 hours and 11.60 hours -- is excessive.

Landmark's counsel also spent an excessive amount of time drafting the instant motion for attorney's fees and costs. The billing records show that Landmark's counsel spent approximately 21.70 hours (8.80 hours researching/evaluating issues pertaining to the fees motion, 9.70 hours drafting or revising the motion, and 3.20 hours preparing, drafting, or redacting exhibits including attorney Tom's declaration) on this task. [ECF Nos. 55-1, pp. 61-63, 83-84, 87; 58-2, pp. 7-8]. The Undersigned notes that Landmark's motion (including the certificate of service) is nine pages, Mr. Tom's declaration is 13 paragraphs, and the remainder of the filing are partially redacted, computer-generated billing invoices. The amount of time billed for this motion is excessive.

Given these numerous examples of excessive and/or duplicative time entries, significant reductions must be made to the hours sought by Landmark.

**b.      Fees on Fees**

As noted above, Landmark's billing records include time for litigating both entitlement and amount of attorney's fees. Florida law allows Landmark to recover for

time spent litigating entitlement, but not for time spent litigating the amount of attorney's fees. *See supra*.

Where, as here, the fees sought for litigating entitlement have not been segregated from those fees incurred in litigating the amount of fees, some courts have employed an across-the-board cut. *See, e.g., Tamar Diamonds, Inc. v. Splendid Diamonds LLC*, No. 10-21470-CIV, 2011 WL 382576, at *7 (S.D. Fla. Jan. 11, 2011) (applying a 15 percent overall reduction where "the majority of the time spent on the litigation of the fees issue . . . was spent on the issue of entitlement, and very little was spent on the issue of amount"), report and recommendation adopted, No. 10-21470-CIV, 2011 WL 381426 (S.D. Fla. Feb. 3, 2011); I*n re Acosta-Garriga*, No. 8:12-CV-731-T-23, 2014 WL 7404122, at *2 (M.D. Fla. Dec. 30, 2014) (reducing hours spent on fee application by 75% because recovery was limited to "the hours spent establishing . . . entitlement to an attorney's fee").

### c.  Across-the-Board Reduction

The billing records in this case consist of 653 separate time entries. The Court need not determine the proper time which should have been spent for each entry. "Where, as here, fee documentation is voluminous, the Court may apply an across-the-board reduction along with a clear and concise explanation of its reasons for the adjustment." *Cap. One v. M/Y VOYAGER*, No. 09-20960-CIV, 2009 WL 4782127, at *5 (S.D. Fla. Dec. 7, 2009) (citing *Lorranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir.1994)).

Here, the Undersigned finds that a 30 percent across-the-board reduction is appropriate to account for excessive time, duplicative work, and fees on fees. *See, e.g., St. Fleur v. City of Fort Lauderdale*, 149 F. App'x 849, 854 (11th Cir. 2005) (affirming 30 percent across-the-board reduction); *Odes v. Harris*, No. 12-CV-61561, 2014 WL 11531573, at *5 (S.D. Fla. Jan. 6, 2014) (applying 30 percent reduction to account for block billing and excessive, redundant, or duplicative time entries); *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, No. 09-60351-CIV, 2011 WL 2535258, at *7 (S.D. Fla. June 27, 2011) (reducing requested fees by 30 percent "to account for billing entries that [were] excessive, duplicative, clerical in nature, unnecessary or otherwise unreasonable," included "block billing and multiple attorneys," and certain discovery hearings).

The total fees sought for the attorney timekeepers in this case is $86,220.00. Adjusted for the hourly rate discussed above, the total fees sought for paralegal Loft is $125.00 (1.00 hour x $125.00).

Applying a 30 percent reduction to the above amounts, the Undersigned **respectfully recommends** that Landmark be awarded a total fee award of **$60,441.50** ($86,220.00 plus $125.00 minus a 30 percent reduction).

ii.       Costs

Landmark also seeks to recover $3,582.70 in costs. This amount consists of: (1) $2,376.00 for Landmark's share of mediation costs and (2) $1,206.70 for obtaining Plaintiff's 30(b)(6) deposition transcript on an expedited basis. Landmark has submitted invoices supporting these costs. [ECF No. 55-1, pp. 91, 93]. Plaintiff does not specifically address the costs sought by Landmark.

The amount sought for Landmark's share of the mediation costs ($2,376.00) is reasonable and recoverable under the PSA. *See Am. Infoage, LLC v. Regions Bank*, No. 8:13-CV-1533-T-23JSS, 2016 WL 7733983, at *10 (M.D. Fla. Dec. 7, 2016) (noting that mediation expenses were not recoverable under 28 U.S.C. § 1920, but were recoverable under the parties' contracts), report and recommendation adopted, No. 8:13-CV-1533-T-23JSS, 2017 WL 111601 (M.D. Fla. Jan. 11, 2017).

Landmark also seeks to recover $1,206.70 for obtaining Plaintiff's 30(b)(6) deposition transcript. [ECF No. 55-1, p. 93]. This amount consists of $422.00 for transcript services, $246.00 for expedited services, $159.00 for professional attendance, $84.70 for exhibit management, and $295.00 for "Veritext Virtual Services". *Id.*

Landmark does not explain why expedited services were necessary or what "Veritext Virtual Services" are and why they were reasonably incurred in this case. *See A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*, No. 17-24223-CIV, 2019 WL 12265726, at *8 (S.D. Fla. June 25, 2019) (noting that certain costs, including expedited transcripts,

41

were recoverable by contractual agreement, but recommending that they be denied because movant failed to articulate how their recovery was reasonable), report and recommendation adopted, No. 17-24223-CIV, Order [ECF No. 224] (S.D. Fla. Sept 27, 2019). Landmark should be permitted to recover $665.70 ($1,206.70 minus $246.00 for expedited services minus $295.00 for "Veritext Virtual Services") in costs for obtaining Plaintiff's 30(b)(6) deposition transcript.

In sum, the Undersigned **respectfully recommends** that Landmark recover **$3,041.70** ($541.00 less than the requested amount) in reasonable costs pursuant to the PSA.

## III. CONCLUSION

The Undersigned **respectfully recommends** that the District Court **grant in part and deny in part** Landmark's motion for attorney's fees and costs [ECF No. 55] and award Landmark **$60,441.50** in attorney's fees and **$3,041.70** in costs.

## IV. OBJECTIONS

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the United States District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions

contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

   **RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on June 14, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All Counsel of Record